## Jaeger Machine Company *v.* L. B. Smith, Inc., Appellant.

Argued March 12, 1941.

Before Keller, P. J., Cunning-
ham, Stadtfeld, Rhodes and Hirt, JJ.

*F. Brewster Wickersham*, of *Metzger & Wickersham*,
with him *Bowman & Bowman*, for appellant.

*J. Boyd Landis*, with him *E. M. Biddle, Jr.*, for ap-
pellee.

Opinion by Stadtfeld, J., April 23, 1941:

This is an action of assumpsit for goods which the
defendant admits were sold and delivered. A counter-
claim was interposed for commissions alleged to be due
from the plaintiff to the defendant upon certain sales
of plaintiff's "truck mixers". The issues were tried; by
Reese, P. J., without a jury.

During 1937 and 1938, the Jaeger Machine Company
located in Columbus, Ohio, was the manufacturer of
"truck mixers", which are concrete mixers built to be

mounted on trucks. The Jaeger Company entered into a written contract with L. B. Smith Company of Camp Hill, Cumberland County, Pennsylvania, giving the Smith Company the right to sell Jaeger's products in Cumberland, Union and other counties. Under this contract, Jaeger agreed to pay Smith a commission of 15% on the net amount of cash less freight allowance on all orders.

The contract provides that the distributor is not permitted to solicit business in another distributor's territory, but that the distributor may sell to customers located within his territory, even though the products are to be shipped outside the territory, and that the distributor may sell to persons who call at his place of business, even if such customer shall be located outside the territory, but in that event, the products cannot be shipped out of the distributor's territory.

The contract further provides that in the event that a dispute arises relating to commissions under this and similar agreements of distributors, the manufacturer reserves the full right to render decision and such decision shall be binding upon the said distributor. The contract further provides that in the event of a dispute arising over the sale of a machine by a distributor to a customer within the territory of another distributor, such dispute is to be settled between the distributors involved.

The Jaeger Company entered into similar agreements with Swift Equipment Company, Philadelphia, covering Philadelphia and Delaware Counties, and with Highway Equipment Company of Pittsburgh, covering Allegheny and Somerset Counties.

The Smith Company is claiming commissions on two sets of sales, which due to their nature must be considered separately.

The first sale concerns four mixers ultimately received by Hempt Brothers, whose place of business is in Cumberland County, Pennsylvania. Prior to the

time of dealing in any of these mixers Jaeger, through Swift, had given Llanerch Ready-Mix Company of Delaware County, Pennsylvania, a price protection order, which was an option to purchase four mixers at the price in effect at the time of the execution of the price protection order. Thereafter, Swift instructed Jaeger to ship four mixers to Llanerch Ready-Mix Company pursuant to said option. The Jaeger Company shipped such mixers, consigned to Llanerch at Philadelphia, billed the same to Llanerch, and sent Swift the necessary documents to be executed in the event that the transaction was to be a credit and not a cash transaction. Swift had, previous to the ordering of the shipment of these mixers, arranged that they were to be turned over to Hempt Brothers in Philadelphia, and payment for them there to be made by Hempt to Swift. This was done, and Swift sent a check to Jaeger for the net price, less the 5% discount for cash and the commission of 15%. Swift knew that these mixers were not to go to Llanerch, but concealed that fact from Jaeger, until after the transaction was completed, when Jaeger learned of it from other sources. Subsequently, Jaeger investigated the circumstances and decided that Swift, and not Smith, was entitled to the commission.

The second set of sales concerns two mixers ultimately going to Robert Reitz. Reitz was a contractor having his principal place of business in Lancaster County, which county was open territory for the Harrisburg and Philadelphia distributors. Reitz was engaged in erecting a post office at Somerset, Somerset County, Pennsylvania, and in the erection of a bridge in Union County, Pennsylvania. Prior to the time of dealing in either of these mixers, Jaeger had given Marion Coal and Supply Company, Allegheny County, a price protection order, which order was negotiated through Highway Equipment Company. Thereafter, Highway instructed Jaeger to ship to Marion, two mixers pursuant to said price protection order. The Jaeger Com-

pany shipped said mixers, consigned to Marion Coal and Supply Company, and billed them to Marion, by whose check payment was made to Jaeger. Prior to the instructions to ship said mixers, Highway had arranged that they were to be turned over to Robert Reitz, who was to pay Marion Coal and Supply Company. All dealings between Highway and Reitz were at Highway's place of business or at Somerset where Reitz was at work. One of these mixers was delivered to Reitz in Pittsburgh, and the other was sent to him in Union County from Pittsburgh by a common carrier.

The commission on said mixers was paid to Highway Equipment Company, although it had been demanded by Smith, whose claim thereto was considered by Jaeger and refused. Jaeger had no knowledge that these mixers were intended for Robert Reitz or that they were ultimately received by Reitz until long after delivery and payment. Highway at all times concealed the true destination of these mixers from Jaeger, even after the deal was consummated.

During June, 1938, the plaintiff through Swift, negotiated the sale of two additional truck mixers to Hempt Brothers, agreeing with the defendant that it should receive half of the commission on the sale, the amount of $398.58 with interest from June 20, 1938, or in the total sum of $456.51.

The lower court, on November 26, 1940, filed its findings of fact and conclusions of law and decision wherein it allowed plaintiff's claim together with interest in the amount of $1332.64, and allowed defendant's counter-claim in the amount of $456.51, being one-half the commission on the sale of two Jaeger trucks sold to Hempt Brothers. The court refused the counter-claim of the defendant covering commissions of $1653 upon the sale of the four truck mixers to Hempt Brothers and the commission in the amount of $826 for commissions on the sales of two truck mixers to Robert C. Reitz.

Exceptions were filed and overruled January 14, 1941,

judgment being directed to be entered in favor of the plaintiff and against the defendant in the amount of $876.13. From this order and judgment an appeal was taken by defendant.

The lower court interpreted the contract and the supplement between plaintiff and defendant as agreements of distribution and not of agency. We believe this is correct. See *Huselton v. Eddie Bald M. Car Co.*, 81 Pa. Superior Ct. 526. Appellant (defendant) however, contends that the supplement 37C changes the relationship from that of distribution to that of agency.

As to four mixers sold by Swift to Hempt Brothers: We quote from the opinion of the court below: "In substance the agreement between plaintiff and defendant was that defendant should have the right to sell plaintiff's products in a designated territory, that defendant would not solicit any business in another distributor's territory, and that plaintiff would not appoint any other selling agent in defendant's territory. Swift had a similar agreement with plaintiff for the Philadelphia area. Swift sold four mixers to Hempt Bros., who were located in defendant's territory. Is plaintiff liable to defendant for the commissions on such sales? Liability of the plaintiff for such commission must be founded on some breach by plaintiff of its contract with defendant. In 2 Am. Jr. §309, the rule is stated that an "exclusive agent" is entitled to commissions for sales in his territory where the principal breaks the contract. Examination of the cases cited to support the rule reveals that it is based upon three types of case, (1) where the principal repudiates the contract entirely, the agent is entitled to commissions on sales he might have made in the future: 41 A. L. R. 1184; (2) where the contract provides that the agent shall receive commissions on all sales in his territory, and (3) where there is a trade usage that a sole agent is entitled to commissions on sales made by others in his territory.

"The instant case, of course, falls into none of these three types of cases. Here we have a manufacturer, the plaintiff, giving a distributor the right to sell in a certain territory and agreeing not to appoint another distributor in the same territory. In effect the plaintiff agreed that it would make no sales in defendant's territory, nor appoint another to do so. If plaintiff had knowingly made delivery under a sale by Swift to a customer in defendant's territory, this in effect would have been an appointment of Swift as an agent to sell in defendant's territory, and hence a breach of contract with defendant.

"When plaintiff delivered and received payment for the four mixers shipped to Philadelphia, it intended a sale to the Llanerch Ready Mix Company, located in Swift's territory. There was no sale to Llanerch, for Llanerch knew nothing of the deal. The use of Llanerch's name was a subterfuge by Swift which deceived the plaintiff and permitted Swift to effect a sale in defendant's territory, nor can it be said that it appointed Swift to do so. *Hence there was no breach by plaintiff of its contract with defendant.*"

The lower court made, inter alia, the following findings of fact: "13. Swift deliberately concealed from plaintiff and its representatives the fact that the 'truck mixers' were to be delivered to Hempt or that they had been delivered to Hempt. 14. Plaintiff had no knowledge that the 'truck mixers' were intended for Hempt or were delivered to Hempt until some time after April 6, 1937."

A similar conclusion as that of the court below in the instant case, is found in *Cedar Rapids Auto & Supply Co. v. Jeffrey & Co.,* 139 Iowa 7, 116 N. W. 1054.

As to two mixers sold to Reitz: Substantially the same method was used by Highway Equipment Company to sell to Reitz as Swift Equipment Company used to sell to Hempt Brothers. It was accomplished in a manner to conceal the real transaction from plaintiff

company who acted in ignorance thereof. It was a violation of a duty owed by one distributor to another, but it was no violation of the principal's contract with defendant. These two machines were sold to and consigned to the Marion Company, and were delivered in Highway's territory. They were paid for by the Marion Company, who was in turn paid by Reitz. Reitz was located in Highway's territory at the time. The distributor's contract provided: "The distributor is permitted to sell customers located in his territory Jaeger products to be shipped outside his territory." The court below made, inter alia, the following findings in relation thereto: "29. Highway deliberately concealed from plaintiff and its agents the facts that the 'truck mixers' were to be delivered to Reitz or that they had been delivered to Reitz. 30. Plaintiff had no knowledge that the 'mixers' were intended for Reitz or were delivered to Reitz until some time after they had actually been delivered and used by Reitz."

Under the original agreement between plaintiff and defendant, dated December 1, 1937, it was provided under Paragraph 13: "Selling Rights—It is understood and agreed that this agreement shall not in any respect make the Distributor the agent of the Manufacturer in any capacity whatsoever, it being intended by this agreement simply to give the Distributor the right to sell said equipment in the territory herein specified upon Distributor's own account. However, no orders procured in the Manufacturer's name for factory shipment shall be accepted and no contract made except at the Home Office of the Manufacturer and by an executive officer thereof; and that all accounts from such customers shall be due and payable to the Manufacturer at Columbus, Ohio, and the Distributor shall not have authority to make collections."

Supplement 37C states: "This supplement provides for *sales privileges as outlined in foregoing agreement and covering specifically Jaeger Truck Mixers, and*

*Jaeger Concrete Spreaders, and Tipple Tanks.*" It nowhere abrogates the provisions in the original agreement that it shall not in, any respect make the *distributor the agent* of the manufacturer in any capacity whatsoever.

The findings of the trial judge without a jury, if supported by competent evidence have the same force and effect as the verdict of a jury.

Under the contract between the parties, Jaeger is not to appoint another distributor in the same territory allotted to the defendant company. The contract also expressly states that the plaintiff is not to be liable in the case of a sale by a distributor in another distributor's territory as follows: "In the event of a dispute arising over the sale of a machine by a distributor to a customer within the territory of another distributor, such dispute is to be settled between the distributors involved."

In *Cedar Rapids Auto & Supply Co. v. Jeffrey,* supra, p. 1055, the Supreme Court of Iowa stated: "It (defendant) did in substance agree that it would not compete with the plaintiff therein (plaintiff's territory), but it did not agree to protect plaintiff against sales by other dealers without its knowledge or authority."

Under 37C sales are to be made on the account of the customer, subject to the approval of the plaintiff and commissions are only to be paid when orders have been shipped and paid for in full. In the body of the contract, where the distributor is admittedly not an agent, sales are to be made on distributor's account.

The defendant argues that the true test is the relationship of the parties, and not what is said about that relationship. Looking at the facts in the instant case, it is apparent that the different mode of doing business, on which defendant predicated the agency relationship, was not here carried out. Swift ordered the mixers in the name of a customer whose credit was approved by the plaintiff, even though Swift knew the mixers were

to be transferred to another customer. The mixers were shipped by the plaintiff to Llanerch by non-negotiable bill of lading, and somehow Swift got possession of them and transferred them to Hempt. He (Swift) collected the purchase price instead of having payment made to Jaeger, deducted the 5% rebate for cash to which the customer was entitled, deducted his commission and sent the proceeds to plaintiff. This amounted to a sale on Swift's account, and, since it was not necessary to carry out the mode of procedure outlined in 37C, the agency which that mode of procedure is supposed to bring into being, never existed, and hence there is no point in taking such operation out of the express agreement of non-agency.

If the contract between the parties be considered as a distributor's agreement only, as we have indicated supra, then there is no evidence of a breach on the part of the plaintiff, and defendant cannot recover.

A careful examination of the entire record shows that the findings of fact by the court below are fully supported by the evidence. We believe the case was properly decided by the court below.

The assignments of error are overruled and judgment is affirmed.